## JOHN E. LEONARD AND OTHERS *vs.* GEORGE B. DYER.

The question whether the performance by one of the parties to a contract of particular stipulations therein, is a condition precedent to his right to demand performance by the other party, is to be determined by the intention of the parties as ascertained by the application of common sense rather than of technical rules to the construction of the contract itself in each particular case.

Where there is an entire, open, unrescinded, special contract, by which all compensation for services to be performed by a party is clearly made conditional upon his full performance, he can not recover either on the contract or in general assumpsit for any partial and incomplete performance; but a case will be brought within this principle only by an intention of the parties expressed in the contract; and where such intention would seem contrary to the equity of the case, courts ought not to enforce it unless unequivocally expressed.

Therefore where A. agreed with B. to transport a certain quantity of lumber to a certain place at a certain rate per thousand feet, and it was not in terms expressly agreed that the whole quantity should be so transported, although such was the understanding and expectation of both parties, and A. afterward did so transport a part thereof, but through the operation of causes which he could not by reasonable care control was prevented from transporting the residue,—it was held, that the transportation of the whole quantity was not a condition precedent to a right of recovery on the part of A., and that he was entitled to recover against B. for the service actually rendered.

*It seems* that if A. had expressly agreed to transport the whole quantity, he might nevertheless be entitled to recover for his part performance, on the ground that the thing to be done by him was in its nature divisible.

ACTION of general assumpsit, tried to the court upon the general issue with notice, at the term of the superior court holden in Middlesex county in February, 1857.

The suit was brought to recover freight on 49,000 feet of lumber transported from Albany to Hartford by the plaintiffs for the defendant. The material facts as found by the court, were as follows:

The plaintiffs were the owners of a schooner engaged in carrying freight, but belonging to no regular line. On the 29th of September, 1856, they agreed with the defendant to transport for him a lot of lumber of about 75,000 feet from Albany to Hartford, at the rate of $2.25 per thousand. No express agreement was made that the whole lot should be taken, but that was the understanding and expectation of

Leonard *v.* Dyer.

both parties. No particular time for loading was agreed upon, but it was understood that the lumber should be put on board the schooner by the plaintiffs without any unreasonable delay. The lumber was then lying on a wharf hired by the defendant, where it was agreed that the plaintiffs were to take it. The plaintiffs without unreasonable delay proceeded to put the lumber on board, commencing on the afternoon of the 30th of September. On that afternoon a freshet commenced in the river and continued through the next day and night. The plaintiffs with extra hands exerted themselves to get the lumber on board, the defendant assisting them. At length, the water continuing to rise, the plaintiffs became alarmed for the safety of their vessel, and ordered her to be hauled away from the wharf to a safe place on the river. About 49,000 feet of the lumber had then been loaded; about 26,000 feet was then on the wharf, but had begun to float off, and soon after the vessel had left the wharf, but not immediately thereafter, the water continuing to rise, the 26,000 feet was carried down the river, and so scattered as to render it impossible to collect it except in small quantities. The defendant requested the captain, who was one of the owners of the vessel and agent of the others, to remain at the wharf and take the residue of the lumber, insisting that he might remain in safety; but the captain thought otherwise. The captain acted in good faith and exercised reasonable care and diligence in taking the lumber on board, and his conduct as agent of the plaintiffs throughout was fair and prudent and reasonable under the circumstances in which he was placed. The vessel proceeded to Hartford, where the lumber on board was delivered to the defendant, who declined paying freight, claiming that the plaintiffs had failed to perform their contract, and that he had suffered large damages by their neglect. The freight of the lumber delivered, at the price agreed upon, amounted to $108.03. The loss to the defendant of the 26,000 feet of lumber exceeded the charge for freight.

Upon these facts the question whether the plaintiffs were entitled to recover was reserved for the advice of this court.

*Warner* for the plaintiffs.

1. The expectation and understanding of the parties that the whole lot of lumber should be taken, was not a contract to that effect. The maxim "*expressum facit cessare tacitum*," obtains as much in oral as in written contracts. Broom's Leg. Max., 278.

2. Admitting a contract to carry the whole lot, yet the inception of the carriers' risk dates from the delivery and acceptance of the goods. Jones on Bail., App. 11. Ang. on Carriers, sec. 129. The delivery is not complete so long as the goods are not placed exclusively in the custody of the carrier. Id., sec. 140. 1 Pars. on Con., 650. Here was no change in the custody of the lumber; it still continued on the defendant's wharf and under his exclusive control.

3. The carrier is not bound to receive goods tendered at an improper time or place. *Lane* v. *Cotton*, 1 Ld. Raym., 646, 652.

4. The delivery must be accompanied by notice to the carrier that the goods are placed in his custody. *Packard* v. *Getman*, 6 Cow., 757. *Sellway* v. *Hollaway*, 1 Ld. Raym., 46.

5. If the plaintiffs are chargeable with the receipt of this lumber on the defendant's wharf, still the loss was occasioned by one of the excepted perils of the carrier, an act of God. Had the lumber left on the wharf been actually put on board, in the event of an apparent danger the plaintiffs could have jettisoned the whole or any part of it, and recovered for the amount delivered, provided such a course had been dictated by a fair degree of reason and prudence under the circumstances of the case. Jones on Bail., 103. Abbott on Ship., (6 Am. Ed.,) 425.

6. In cases of great apparent peril in the performance of a contract, there need not be an absolute necessity for its abandonment. It is sufficient if the defaulting party shows that he abandoned it under a reasonable belief of a necessity impelling him so to do. Broom's Leg. Max., 182. Abbott on Ship., (6 Am. Ed.,) 365.

7. The contract is divisible. If entire, it became impossi-

ble of performance without fault of the plaintiffs. The acceptance of the 49,000 feet was a severance of it in fact, raising an implied promise on the part of the defendant to pay for the part received. *Luke* v. *Lyde*, 2 Burr., 882. *Post* v. *Robertson*, 1 Johns., 24. *Pinto* v. *Atwater*, 1 Day, 193. *Lord* v. *Wheeler*, 1 Gray, 282. *Ritchie* v. *Atkinson*, 10 East, 295.

*H. K. W. Welch* for the defendant.

1. The contract was an entire and indivisible one for the transportation of the entire lot of lumber. Abbott on Ship., (6 Am. Ed., 405.) *Clark* v. *Baker*, 5 Met., 452. *Davis* v. *Maxwell*, 12 id., 286. *Faxon* v. *Mansfield*, 2 Mass., 147. *Waddington* v. *Oliver*, 5 Bos. & P., 61. 2 Pars. on Con., 31, 32. *Clark* v. *Terry*, 25 Conn., 395.

2. The contract being entire, there can be no recovery by the plaintiffs without entire performance. There can be no apportionment of the freight, from whatever cause the failure to perform arises.

3. The plaintiffs entered into an unconditional agreement to do two things, to put the 75,000 feet of lumber on board the vessel, and to transport the same to Hartford.

4. That these two engagements were distinct and entered into by the plaintiffs in two different capacities is evident; 1st. Because in this case the question of a right to freight for the thing to be done determines the character of the contracting party, whether common carrier or not. Flanders on Ship., sec. 535. *Allen* v. *Sewall*, 2 Wend., 327, 342. But the right to freight does not commence till after the vessel has broken ground and begun her voyage. Abbott on Ship., (6 Am. Ed.,) 462. *Burgess* v. *Gunn*, 3 Har. & John., 225. Ang. on Carriers, sec. 393. 2nd. Because the plaintiffs could not have been compelled as common carriers to take the lumber where it was and load it, which is decisive as to their character in this transaction. 2 Kent's Com., 599.

5. Whatever exceptions therefore the law may imply as to the plaintiffs' liability upon their contract to transport the lumber, nothing can excuse the non-performance of their con-

Leonard *v.* Dyer.

tract to put the lumber on board. Chitty on Con., 734, 5. 2 D'Anver's Ab. 84, secs. 8, 9. 2 Pars. on Con., 184, 5, and notes. *School Dist. No.* 1 v. *Dauchy*, 25 Conn., 530. *Bright* v. *Paige*, 3 Bos. & P., 295, n. *Barker* v. *Hodgson*, 3 M. & S., 267. *Barrett* v. *Dutton*, 4 Camp., 333. *Atkinson* v. *Ritchie*, 10 East, 530.

6. But if the law implied the same exceptions to the plaintiffs' liability in respect to both undertakings, still the entire lot of lumber was delivered to and received by the plaintiffs. *Merriam* v. *H. & N. H. R. R. Co.*, 20 Conn., 354. Immediately upon such delivery and acceptance their liability as common carriers commenced, and they are *prima facie* liable for the loss. 1 Pars. on Con., 650. Ang. on Carriers, sec. 129. Flanders on Ship., secs. 184, 189, 261.

7. The facts found in this case do not exempt them from this liability. Flanders on Ship., sec. 261. 2 D'Anvers Ab. 84, sec. 9. Chitty on Con., 735. *Barker* v. *Hodgson*, Supra. *Barrett* v. *Dutton*, Supra. *Atkinson* v. *Ritchie*, Supra. *McArthur* v. *Sears*, 21 Wend., 190. 1 Smith's Lead. Cas., 104.

8. The plaintiffs being liable for the loss of the lumber, they can not recover anything, even though the contract for freight be considered severable, because the defendant is entitled to recoup his damages. Sedgw. on Dam., 439, et seq. *Still* v. *Hall*, 20 Wend., 51. *Batterman* v. *Pierce*, 3 Hill, 171. *Dunbar* v. *Buck*, 6 Munf., 34.

HINMAN, J. The question whether the stipulations in a contract, in respect to acts to be performed by the parties, are conditions precedent to the right to enforce performance on the part of one of them, is to be determined by the intention, as it is derived from the contract itself, rather than from any technical rules of construction which might be applied to it. As remarked by Tindal, C. J., in *Stavers* v. *Curling*, the rule has been established by a long series of decisions in modern times, that the question whether covenants are to be held dependent or independent of each other, is to be determined by the intention of the parties as it appears on the

instrument, and by the application of common sense to each particular case ; to which intention, when once discovered, all technical forms must give way.

No doubt where there is an entire, open, unrescinded, special contract, by which compensation for services to be performed is clearly made to depend upon full performance, the party whose part is unperformed can not recover, either on the contract itself or in general assumpsit, for such part performance as he may have rendered ; because the parties may enter into such stipulations as they please. But the question in every case is whether such intention is expressed in the contract ; and where such intention would seem to be contrary to the equity of the case, courts ought to require that it should be clearly and precisely expressed before they enforce it. Applying the plain and reasonable rule of construction just suggested to the present case, we think it was not the intention of these parties that the transportation of the whole lot of lumber should, under all circumstances, be a condition precedent to the right of the plaintiffs to recover for any thing they might do under the contract.

By the finding it appears that there was no express agreement that the whole lot of lumber should be taken, but as there was an understanding and expectation that it would be, it is insisted that this was necessarily implied, and is therefore as much a part of the contract as if it had been definitely expressed. If, in fact, it had been expressed in general terms that the whole lot should be taken, it might perhaps be worthy of consideration, whether, in order to give a reasonable construction to it, such an unforeseen contingency arising from the act of God as existed in this case, and prevented its performance, ought not to be considered as excepted out of it. But, however this may be, it appears to us that to supply by implication a stipulation not contained in the contract, that the plaintiffs would at all events take and transport to Hartford the whole lot of lumber, without reference to any unforeseen contingencies, would be quite unreasonable ; and the expectation of the parties that the whole lot would be taken, is quite insufficient for the purpose of sup-

plying such a stipulation. Had the parties contemplated such a freshet in the river as to make it impossible, in the exercise of reasonable care and diligence, to put the lumber on board the vessel, it is plain that the master of the vessel would never have entered into a contract to do it. And if we were to add stipulations to the contract which the parties themselves did not make, it appears to us that such only should be inferred as the parties themselves would have made, had they foreseen the circumstances that rendered such stipulations important.

But had the contract been such as the defendant contends that it was, we should still be of opinion that the plaintiffs might recover for the lumber that they actually transported under it. The case then would be very similar to that of *Ritchie* v. *Atkinson*, 10. East, 295, where the master of a vessel had contracted to bring to London a complete cargo, to be paid for at a certain rate per ton, and inasmuch as the contract was divisible, the court held that the plaintiff might recover for so much as he actually brought, though less than a complete cargo. And Lord Ellenborough remarked, that all the cases of conditions precedent have been where the thing to be done was a strict indivisible condition. Here, as in the case referred to, the delivery of the lumber, to be paid for in proportion to the extent of the delivery, leaving the defendant to his remedy for a short delivery, is in its nature divisible; and on this ground the plaintiffs would be entitled to recover. The defendant's case, as it appears to us, is no stronger than the case of *Boone* v. *Eyre*, 6 T. R., 573, where the defendant was held liable to pay for a plantation with the negroes upon it, although the plaintiff had covenanted that he had a good title and was lawfully possessed of the negroes, and the defendant covenanted that the plaintiff well and truly performing all and every thing in the deed contained on his part to be performed, he, the defendant, would pay, &c., and the plea, which was overruled, set up the fact that the defendant had not a good title to the negroes, and was not at the time legally possessed of them. We have not, therefore, thought it necessary to enquire whether the

plaintiffs' case comes within the principle upon which a class of cases rests, some of which have been cited in the argument, in which it has been held that where a plaintiff has been prevented by the act of God from performing certain specified services contracted for, he may nevertheless recover for what he has done under such a contract; being satisfied for the reasons already given that the plaintiffs are entitled to recover the pro-rata compensation provided for in the contract for the lumber actually transported by them. And so we advise the superior court.

In this opinion the other judges concurred.

Judgment for plaintiffs advised.